May it please the Court, I'm Suzanne Luban, James Barron's attorney, appellate's attorney. I'd like to reserve three minutes for rebuttal. I think I should start first with prejudice, because I recall that the appellee agrees with us that the counsel owes a duty to explain his constitutional rights, including the right to testify, as has been held in other circuits as well. In this case, Mr. Darr, the trial attorney, testified at the evidentiary hearing that, absent the issue of Mr. Barron's priors, he would have liked to call Mr. Barron and that Mr. Barron could have provided helpful testimony. The testimony of a defendant is extremely important to a jury, and in this case, it was even the sound of the defendant's voice that was at issue, as well as his credibility and his statements, explanations about his motivations and where he was. In this case, there was no drug transaction where there was a police officer in any close proximity. They were 100 feet away, 200 feet away, flying above in a helicopter with binoculars, and each time the jury was asked to rely on the testimony and credibility of this informant. Counsel, did I hear you say that defense counsel had an obligation to advise the defendant of his right to testify? That's correct. Now, what case are you relying upon to support that argument? Well, Your Honor, there are numerous cases in other circuits, and specifically in our circuit, Wagner indicates it's the responsibility of the attorney to advise the defendant of the decision whether to testify and to advise him of the pros and cons. Wagner? Yes, I can. Did you? Okay. United States v. Wagner. Now, that says that the trial court does not have the obligation, but it says in there, you're reading it to say that the attorney has that responsibility? That's correct, Your Honor. Okay. What page of Wagner are you relying upon to support your argument that that case says that it's the attorney's obligation to so advise his client? If you can't find it right away, you can bring it back to me. I will definitely do that, Your Honor. You quote it as saying it's primarily the responsibility of the defendant's counsel, not the trial judge, to advise the defendant of whether or not to testify. Right. But I want to know the language, the specific language in that case. And specifically in this circuit, this Court has held that there are reasons why the Court should not mention that and should not try to take a waiver on the record, because it could be seen as interfering in Jolson and in Edwards. And so if the waiver of a constitutional right can only be made knowingly and intelligently, then certainly someone has to have the obligation to convey that information to the client. Well, the reason I was asking that, because it seems like in our case in O'Hara said that it's not ineffective assistance of counsel if counsel does not specifically tell the – if the defendant is silent when he's not called to testify and doesn't apprise the court that he wants to testify, there is no ineffective assistance of counsel. That's why I was asking you what language in Wagner, because it seems that that argument is precluded under Nahara. Well, Your Honor, I will take a look when I sit down at O'Hara and see. But I believe that in a situation where – such as in Jolson, where the defendant is new of his right, and, in fact, in Jolson, that the court informed the defendant of his right to testify, and the defendant chose to accede to the wishes of his counsel, that there can't be ineffective assistance of counsel in that kind of situation. But here we've rebutted the presumption that a defendant accedes to the wishes of his counsel by remaining silent. Mr. Darst specifically testified that he did not advise Mr. Barron of his right, and that, in fact, it's his practice not to do so, and that if he ever gets into a situation where he has to tell the defendant that he – the defendant has the right to go against his advice, that the situation will have broken down so far that he could no longer represent that person. Wasn't Mr. Darst's testimony somewhat sketchy on that point? He didn't remember whether he did or didn't or something like that? No, actually. I believe that it was Mr. Wilson who testified that he only had Mr. Barron during the plea negotiation period of the case and that he had not prepared the case for trial. So although it was his practice generally when preparing a case for trial to advise counsel, he did not – I mean, to advise the defendant. He did not recall whether he had so advised Mr. Barron but did testify that he had not yet reached the point in the case where he was preparing the case for trial, that there was supposed to be a plea and the representation broke down over a disagreement around the plea. But Mr. Darst was adamant at the testimony that it was his practice not to tell a defendant that he has the right to testify or the right to go against Mr. Darst's wishes and that in this specific case he was authoritarian. He used that word, or authoritative, one word like that. He said you shouldn't testify. He said you absolutely can't testify, you're not going to testify, I'm not going to call you, things like that. Yes. That implied to Mr. Barron, a man who Mr. Darst understood. You cut him your own throat. Well, Your Honor, that's the magistrate's assessment of prejudice is if it's good advice. If it's a good idea, then there can't be prejudice. And so – but in this particular case – You have to have prejudice for ineffective assistance. I guess I – Well, so I argue that in this case the – you know, Mr. Darst felt that it would be suicide because of the priors, not because of any other reason, that he would have been helpful otherwise. And so that feeling of counsel discounts the instruction that jurors get, that they're only to consider the priors as to credibility, not as to guilt. See, I'm not – then I'm not quite sure what your position is. Is it your position that he should have testified or that he wasn't aware that he could testify? I don't have to prove that he should have testified, but certainly he was not aware that he could testify, and he informed his counsel repeatedly that he wanted to. And those requests, even during trial, were dismissed by Mr. Darst. But what's the prejudice? In order to show prejudice, you have to show that if he had testified, there's a likelihood that there would have been a difference. A reasonable probability that one juror would have had a reasonable doubt as to his guilt. These people were hanging out in a garage, and the recording was a body wire. I'm sure this Court has heard body wire tapes. It was very poor quality. Now, the prosecution says, well, we enhanced the tape. But that alters the sound of voices as well. But that was a confidential informant as well. That's correct. And this informant was told by the probation officer who hired him to be an informant, I want James Barron. You get credit for buying 4 ounces or 6 ounces or whatever from James Barron specifically, not from just anybody at this house. So when he was making these early transactions with Troy Barron, which were observed in front of the house, that wasn't good enough. That did not buy the freedom for this CI. So he was highly motivated to attribute transactions that occurred behind closed doors. But he identified your client, and there was an opportunity to impeach him or question him regarding his motivation and his identity. So how can that establish prejudice? Well, without Mr. Barron testifying and without the jury hearing his voice and understanding also one of the important aspects that Mr. Dar mentioned is that Mr. Barron is, as we know, a simple guy. And so his testimony would have also conveyed that to the jury, and Mr. Dar could have argued how could a guy like this manage an organization and undertake these buys and sales that are being described. I had the impression from the record also that Mr. Barron had previous experience testifying. That's correct. He had been in ---- He had two convictions because of it. Well, but he didn't yell at the prosecutor in either one of those cases. He was instructed by his counsel to do that in his prior cases. And so that just supports his view that he was supposed to follow the instructions of his counsel, that his counsel made the tactical decision and had the power to make that ultimate determination. He doesn't, he isn't arguing he has any new evidence now. No, Your Honor. No. That would show that, would now show that he was innocent or somebody else. No, just that he would lack the mental capacity to run this organization and that the voice that was attributed to him by this very dirty C.I. was, in fact, not his voice but the voice of his brother, Ernest, who was seen at the place, who had run-ins with the law, who also had priors and could easily have been the person in the garage selling the drugs along with Troy Barron. Did Ernest, has Ernest ever said anything like this? Ernest died before the trial. But he was alive during all this time. The C.I. knew him. He was hanging around there also. But there was testimony from officers who knew Ernest and knew your client and described the difference in their height, their appearance, and why they would not be confused for each other. These gentlemen were very close in height. They were very big men. Their heads are larger than most people, and the brothers looked very alike. There was testimony that they were often confused for each other, and, in fact, one of the officers on the stand couldn't distinguish them. Right. So there was certainly a lot of confusion introduced, and that could have supported a reasonable doubt along with Mr. James Barron's voice. Your argument is that even though all that was in the record, had the defendant testified about it, it might have been better for him. Basically. It would have increased the jury's awareness of the difference in his voice and what he sounded like. And his past record as well. And his past record and his demeanor. I'd like to. You don't have any more time. I'm backwards. All right. If there are any questions, we'll let you answer them. Thank you. May it please the Court. I'm Samantha Spangler, Assistant United States Attorney. I'd like to refer you to the excerpts of record, page 129 and 130. Those pictures compare James Barron, who's in page 129, and Ernest Barron, who's in page 130. And I'd also like to point out that the magistrate judge compared the two and analyzed that issue in his findings and recommendation and pointed out that he could tell the difference and that there was a significant difference in the testimony that James Barron gave at the evidentiary hearing between his size and his brother's size. If I remember right, his brother was substantially shorter than he was and perhaps a little broader than the defendant. Which one is which? James is shown with his wife on his lap in page 129. And Ernest is shown on page 130. Okay. Were you the trial counsel? No, I was not. It was Elena Duarte, who is now a Sacramento Superior Court judge. And Judge Schroeder was one of the judges on the initial panel for Mr. Barron's direct appeal. I'd also like to point out that the findings and recommendations at page 31 through 41 of the excerpts of record analyze all of the ways in which the evidence supports corroboration of the confidential informant. So Ms. Luban's current argument that all of this case hinged on the CI is just not correct. I mean, the CI's testimony was substantially corroborated by other evidence in the case. And Judge Hollows analyzed that in great detail in his findings and recommendations. Is it ineffective assistance of counsel for counsel not to advise their client they have a right to testify? Your Honor, I don't wish to opine about matters generally. I wish to opine about this case because that's the case that I've been assigned to and I believe that's the case that this Court must decide. Well, I believe that Mr. Dar did, in fact, advise Mr. Barron that he should not testify. Implicit in that is you have a choice. And there are so many other examples of the defendant knowing of his right to testify in this case. There's the fact that he did have two prior trials in state court in which he did testify. There's the fact that in this particular case, he addressed Judge Levy on the day that or the day before his trial was originally scheduled to start with Mr. Wilson and, you know, he spoke up. He had the ability to do that and he wasn't shy about doing that. In addition to that, during this trial, which was in September and October of 1997, there were conferences outside the presence of the jury in which, and this was right before the CI was called to testify, in which Latrina Williams' statements, that's one of the co-defendants, there was discussion about a Bruton issue. And it was important for James Barron to have paid attention to that because this is evidence that would have incriminated him. So we can assume that he was paying attention during those proceedings. And in addition to that, one of those attorneys said on the record during one of those sessions, it's of course the defendant's right to testify. He said those words. If we don't agree with your assumptions and we determine that the record does not establish that the defendant was advised of his right to testify, what's your position regarding whether or not that constituted ineffective assistance of counsel? Well, Your Honor, I believe that this case, Claim 1, should be decided on the prejudice prong. I don't even think you should get to the performance prong. But even if you do get to the performance prong, I think that you still must look at the prejudice. And there was simply no prejudice in this case because, I mean, Randy Darr and Bob Wilson, who were his attorneys during the trial proceedings, first Wilson and then Darr, they both believed that there was a strong likelihood that these prior convictions would come in if the defendant were to take the witness stand. And so it was their advice to the defendant, or it would have been Mr. Wilson's advice if he had gotten to that point, not to testify because of the substantial risk that these priors would come in and not, as defense counsel speculates, just as prior convictions, prior felony convictions, without the nature of the conviction being, the jury being informed about the nature of the conviction. They would have likely come in as cocaine-based sales convictions in this cocaine-based distribution charge trial. And so, I mean, there would have been. Under what rule of evidence do you think they would have come in? Well, they would have come in initially under 609 for impeachment of the defendant. And then after that, the trial judge likely would have allowed the prosecutor to prove them up in her rebuttal case under 404B. And so I think there are also other risks involved in the defendant's testifying, and one of them is his vulnerability on many of the underlying issues. There was a lot of evidence against him. This court, I think, said evidence against Mr. Barron abounds in its decision on the direct appeal. And it's true. I mean, the court even enumerated some of the evidence that abounds against Mr. Barron in the direct appeal opinion. So the prosecutor certainly would have asked Mr. Barron about the details of those things. In addition to that, Mr. Barron had some unfortunate history with this prosecutor where he thought that she was being completely unfair with her plea offers. And they had this emotional history where she likely would have gotten under her skin in cross-examination. She probably would have tried to, and he probably would have lost it because he had this inability to control his emotions, as Mr. Darg testified to at the evidentiary hearing. What's your response to opposing counsel's observation that if he had testified, it would have been apparent that he didn't have the mental capability to run this operation that he was accused of? Well, Mr. Darg talked about that possibility. But, you know, the fact is that he was running the Oak Park Bloods. And the thing is that that would have come out on cross-examination by the prosecutor. Maybe not the Oak Park Bloods, but certainly would have come out the operation that he was running, his control over it, his control over the Stash House and the other residences involved in the case. It would have come out. I wanted to point out to you where in the Wagner case you can find the passage about the trial attorney having the duty to advise the defendant. And that's on page 1483. There is certainly no duty on the part of the trial court. And the Ninth Circuit cites a Seventh Circuit case and then quotes from it. It is primarily the responsibility of the defendant's counsel, not the trial judge, to advise the defendant on whether or not to testify and to explain the tactical advantages and disadvantages of doing so. So doesn't that help Mr. Barron's argument if Wagner says it's the responsibility of the defense attorney to advise the defendant of his right to testify? I don't think so, Your Honor, because Mr. Darr did. He advised him that he should not testify because those prior convictions would come into evidence and they would kill him. It would be suicide for him to take the witness stand during trial. There was an evidentiary hearing here, was there not? There was an evidentiary hearing on the 2255. Correct, Your Honor. That took place at the end of February, beginning of March of 2006. So it was eight and a half years after the trial. And Mr. Darr's recollection had to be refreshed quite a bit, but he did remember these things. They came kind of rushing back to him as we got into some of the details. What was the finding with respect to whether or not the defense counsel told him you can't testify versus? Versus you shouldn't? Versus it's a really bad idea. Well, I think you have to read the findings and recommendations fairly thoroughly to get this out of that. But my understanding of them is that the magistrate judge determined that Mr. Darr advised him that he should not, and implicit in that was that he had the choice. And that although he said so in a fairly controlling and authoritative manner, authoritarian manner, it still was advice nonetheless, and it was a good, strong tactical advice. Are there any other questions? Do you understand the other side's argument to be that basically that he should have testified? Yeah. Yeah. And he would have been killed. Okay. I mean, the jury would have convicted him that much more quickly is what I mean to say. All right. Thank you. Thank you, Your Honor. Are there any questions of the appellant's counsel? All right. Thank you. The case just argued is submitted.
judges: Collins, Schroeder, Rawlinson